**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **KENNY KLOSTERMAN,**<br>　　　　　　　**Plaintiff,**<br><br>　　　　v.<br><br>**DISCOVER PRODUCTS INC. d/b/a<br>DISCOVER BANK,**<br>　　　　　　　**Defendant.** | **CIVIL ACTION**<br><br><br>**NO.  24-1253** |

**MEMORANDUM OPINION**

　　　　Plaintiff Kenny Klosterman has sued his credit card company, Defendant Discover Products, Inc. ("Discover"), for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, alleging that it, among other things, "willfully and negligently" failed to conduct a reasonable investigation regarding a disputed charge on his credit card and then furnished inaccurate information to credit reporting agencies.  *See* 15 U.S.C. § 1681s-2(b).   Discover moves to compel Klosterman to arbitrate his claims against it and stay the action pending the outcome of that arbitration.  9 U.S.C. § 3.  Separately, Klosterman moves to exclude the declaration of a Discover employee, which Discover submitted in support of its motion.

　　　　For the reasons that follow, Klosterman's Motion will be denied, Discover's Motion will be granted, and this case will be stayed pending resolution of the arbitration proceedings.

　　　　**I.　　BACKGROUND**

　　　　　　**A.　　Procedural Background**

　　　　Shortly after Klosterman filed his Complaint, Discover moved to compel arbitration and stay this case pending resolution of the arbitration proceedings, which motion the Court denied without prejudice.  In its motion, Discover pointed to an arbitration provision in the agreement, which it contends governs Klosterman's Discover credit card account (the "Cardmember

Agreement"), arguing that there was no genuine dispute as to the validity and enforceability of that arbitration provision and that, accordingly, the motion should be granted. Klosterman countered that because he did not recall ever seeing a Cardmember Agreement, he was entitled as the non-movant to conduct discovery regarding the arbitration provision. He was right so the Court denied Discover's motion without prejudice and allowed Plaintiff to conduct limited discovery regarding: (1) "Discover's practices and procedures regarding the mailing of new credit cards and cardmember agreements"; (2) "Discover's records regarding the mailing of such credit cards and cardmember agreements to Klosterman"; and, (3) "[t]he nature of the corporate relationship between Discover Bank and Discover Products, Inc."

Upon completion of the allowed discovery period, Discover renewed its Motion to compel arbitration and stay the case pending arbitration, which Motion is now before the Court. In support of its Motion, Discover submitted a declaration of Janusz Wantuch (the "Wantuch declaration"), Vice President of Credit Risk Management for Discover Products, Inc, which is the declaration that Klosterman has moved to exclude. Wantuch attests that he manages and oversees the "'change in terms' process relating to Discover Card revolving credit cards, including notification to customers about amendments to the . . . Cardmember Agreements."

## II.    LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity," 9 U.S.C. § 2. "A party aggrieved by the alleged failure . . . of another to arbitrate . . . may petition any United States district court which, save for such agreement, would have jurisdiction . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." *Id.* § 4.

The FAA "reflects an 'emphatic federal policy in favor of arbitral dispute resolution.'" *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (per curiam) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)); *accord Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (acknowledging the "liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary"). Pursuant to that "liberal" policy, "courts must place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations omitted).

Nonetheless, "a party cannot be compelled to submit a dispute to arbitration unless it has agreed to do so." *Century Indem. Co. v. Certain Underwriters at Lloyd's London*, 584 F.3d 513, 524 (3d Cir. 2009). "[I]n deciding whether a party may be compelled to arbitrate under the FAA, [courts] first consider (1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement." *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014) (internal quotation marks omitted).

When evaluating a motion to compel arbitration, the appropriate evidentiary standard that is to be applied depends on the pleadings. "[W]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." *Guidotti v. Legal Helpers Debt Resol., LLC*, 716 F.3d 764, 776 (3d Cir. 2013) (internal quotation marks and citation omitted). On the other hand, if either: (1) "the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity to establish on its face that the parties agreed to arbitrate;" or,

3

(2) "the opposing party has come forth with reliable evidence that is more than a naked assertion . . . that it did not intend to be bound by the arbitration agreement, even though on the face of the pleadings it appears that it did," the summary judgment standard found in Federal Rule of Civil Procedure 56 applies, and limited discovery should be allowed. *Id.* at 774 (internal quotation marks and citations omitted).

Here, as both parties agree, the Rule 56 summary judgment standard is appropriate following the denial of Discover's first motion to compel arbitration and the limited discovery that was allowed. Thus, Discover's motion will be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "A genuine issue is present when a reasonable trier of fact, viewing all record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986)). "Material facts are those that could affect the outcome of the proceeding." *Roth v. Norfalco LLC*, 651 F.3d 367, 373 (3d Cir. 2011). In making these determinations, the court must view the facts and draw all reasonable inferences in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255. The non-moving party, however, "may not merely deny the allegations in the moving party's pleadings; instead, he must show where in the record there exists a genuine dispute over a material fact." *Abington Friends Sch.*, 480 F.3d at 256 (citation omitted).

### III.     DISCUSSION

#### A.     The Existence of a Valid Agreement to Arbitrate

Turning first to the second element of the inquiry, Discover argues that arbitration is required because "[Klosterman's] claims are clearly covered under the broad language of the parties' Arbitration Agreement." Yet, Klosterman's brief, even when generously construed, contains no case law or discussion in contravention of Discover's arguments. Accordingly, any opposition to such argument is waived and there is no genuine dispute as to any material fact on this element. *Valentin v. Attorney General of U.S.*, 386 Fed. App'x 279, 282 (3d Cir. 2010) ("Because no argument is presented . . . we deem the issue waived.").

Therefore, the only question at issue in this case is whether there is a valid agreement to arbitrate between the parties. Because arbitration is a matter of contract, "[t]o determine whether the parties agreed to arbitrate, we turn to ordinary state-law principles that govern the formation of contracts." *Kirleis v. Dickie, McCamey & Chilcote*, *P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (internal quotation marks omitted). Under Delaware law, which the parties agree applies here, "the formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration." *Sarissa Cap. Domestic Fund LP v. Innoviva, Inc*., 2017 WL 6209597, at *21 (Del. Ch. Dec. 8, 2017) (citation omitted); *see also Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010) ("[A] valid contract exists when (1) the parties intended that the contract would bind them, (2) the terms of the contract are sufficiently definite, and (3) the parties exchange legal consideration." (citation omitted)). "[M]anifestation of mutual assent is an 'external or objective standard for interpreting conduct.'" *Chemours Co. v. Dow DuPont Inc.,* 2020 WL 1527783, at *10 n.130 (Del. Ch. Mar. 30, 2020) (quoting Restatement (Second) of Contracts § 2 cmt. b (1981)); *see also Leeds v. First Allied Conn. Corp*., 521 A.2d 1095, 1097 (Del. Ch. 1986) (identifying as the test for contract formation "whether a reasonable

5

negotiator in the position of one asserting the existence of a contract would have concluded . . . that the agreement reached constituted agreement on all of the terms that the parties themselves regarded as essential and thus that that agreement concluded the negotiations and formed a contract").

### B.     Wantuch's Affidavit

Both parties agree that Klosterman first applied for and received a Discover credit card in 2009.  Klosterman asserts that he subsequently requested and received a new Discover credit card in 2022.  At neither point, however, does he "recall ever seeing any card member agreement or arbitration agreement."  Wantuch attests that Discover mailed Klosterman's credit card and the applicable Cardmember Agreement to him at the address listed on his application, which is consistent with Discover's "standard practice" when opening accounts.  Wantuch further states that Discover mailed Klosterman updated Cardmember Agreements to that same address on three additional occasions: June 4, 2018, March 24, 2020, and May 3, 2022.  "Pursuant to Discover's regular business practice, if mail had been returned, there would be a notation in the records" of the account at issue.  After "personally review[ing]" Klosterman's account history and associated records, Wantuch found no record that the postal carrier returned the two credit cards or four Cardmember Agreements as undeliverable.[1]

Abstracting from Wantuch's affidavit, Discover argues that the arbitration provision in the Cardmember Agreements is valid and enforceable based on the following facts: (1) Klosterman opened a Discover credit card account in 2009; (2) the credit card account is governed by the terms and conditions of the Cardmember Agreement—one of which is a binding

---

[1] Although Wantuch acknowledges that "Discover no longer retains records confirming the mailing of the 2009 Cardmember Agreement," he asserts that any delivery issue would nonetheless be logged in Klosterman's account consistent with Discover's "regular business practice."

6

arbitration provision; (3) Discover mailed four Cardmember Agreements to Klosterman at the same address in 2009, 2018, 2020, and 2022 respectively; (4) pursuant to Discover's regular business practice, there would be a notation in the records of a cardholder's account if any mail, including a credit card or a Cardmember Agreement, had been returned as undeliverable; (5) Discover's records for Klosterman's account do not show any such notations; (6) Klosterman subsequently and repeatedly used his Discover credit card; and, (7) Discover has no records of Klosterman rejecting the arbitration provision.

Klosterman does not dispute any of these facts. Instead, he argues that the Wantuch declaration and accompanying exhibits should be excluded from consideration. Specifically, he contends that the records are inadmissible because they are: (1) not based on Wantuch's personal knowledge; (2) replete with conclusory statements that lack the necessary authentication; and, (3) inadmissible hearsay. When pared down only to those statements properly before the Court, submits Klosterman, Discover has failed to carry its burden of proving the existence of a valid and binding arbitration agreement, as it did not establish that he ever received the Cardmember Agreements or assented to the arbitration of his FCRA claims.

Klosterman's arguments are unavailing. On a motion for summary judgment, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Rule 56(c)(4) sets out three elements that a declaration in support of a summary judgment motion must meet: it (1) "must be made on personal knowledge"; (2) "set out facts that would be admissible in evidence"; and, (3) "show that the affiant or declarant is competent to testify on the matters stated." *Id.* As for authentication, the proponent has an "incredibly 'slight' burden, which may be satisfied by simply producing evidence sufficient to support a finding that the item is what the proponent

7

claims it is." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 330 (3d Cir. 2014) (citing Fed. R. Evid. 901(a)).

It is well-established that a declarant is competent to testify to matters of which he has personal knowledge. *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.") The Third Circuit has found a witness's personal examination of records introduced at trial sufficient to satisfy the personal knowledge requirement of Rule 602, *see United States v. Bansal*, 663 F.3d 634, 667 (3d Cir. 2001), and several lower courts have determined that a witness gains the requisite personal knowledge by reviewing business records—including those records of which he did not have any prior, specific knowledge. *See, e.g.*, *Acosta v. Cent. Laundry, Inc.*, 273 F. Supp. 3d 553, 556 (E.D. Pa. 2017) (finding that a witness "developed personal knowledge of Defendants' employment practices through interviews with Defendants' employees as well as personal examination of Defendants' extant records."); *Crumpler v. Midland Credit Mgmt., Inc.*, 2013 WL 6576318, at *2 (E.D. Pa. Dec. 13, 2013) ("Plaintiff would have this Court hold that [the witness] needed specific personal knowledge of all the details of [Plaintiff's] account history that he acquired independently of his review of business records. The rules of evidence do not require this degree of proximity to the facts that a witness sponsors, especially in the context of business practices and records.").

Further, Federal Rule of Evidence 803(6), colloquially known as the business records exception, permits the admission of documents containing otherwise inadmissible hearsay provided that the proponent demonstrates that:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a

> business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

With this in mind, the Wantuch declaration easily meets the requirements of Rule 56(c)(4). Contrary to Klosterman's argument that Wantuch must have been "personally involved" in the mailing of the Cardmember Agreements, Wantuch gained the requisite personal knowledge—thus demonstrating his competency to testify—by "personally review[ing] the available account history and records relating to [Klosterman's] account." Further, the accompanying exhibits are admissible under Rule 803(6), as Wantuch is an authorized representative of Discover and avers that the exhibits "are true and correct copies of the records that were made at or near the time of the occurrence of the matters set forth therein by the person with knowledge of these matters, and were made, kept by, and relied upon in the regularly conducted business activity as a regular practice of Discover." Although Klosterman gestures at disputing the authenticity of certain exhibits, such as a computer screenshot of the Discover database confirming the mailing of the 2018, 2020, and 2022 Cardmember Agreements, courts routinely admit such documents where, as here, the proponent makes a showing of reliability supported by personal knowledge. *See Bansal*, 663 F.3d at 667-68 (finding that the government properly authenticated screenshots of a defendant's website where it obtained the images from a company that maintained a database containing all websites on the internet over period of more than one decade, and the witness testified, among other things, about how the company's website

worked and the reliability of its contents); *see also Defillipis v. Dell Fin. Servs.*, 2016 WL 394003, at *6 (M.D. Pa. Jan. 29, 2016) (finding that computer screenshots "memorializing Plaintiff's acceptance of" a credit agreement were "properly authenticated by [the proponent's] signed [d]eclaration"). Because of this, Klosterman's Motion to exclude the Wantuch declaration shall be denied.

### C. Merits of Discover's Motion to Compel Arbitration

Turning finally to the merits of Discover's Motion, for the reasons set forth below, when viewing the undisputed facts set forth in the Wantuch declaration in the light most favorable to Klosterman, there is no genuine dispute of material fact as to whether there exists a valid and enforceable agreement to arbitrate.

As a threshold matter, Klosterman has not responded to or rebutted any of the facts outlined in the Wantuch declaration and supporting exhibits. Although Klosterman attests that he "do[es] not recall ever *seeing* any card member agreement or arbitration agreement" at any time since opening his account in 2009, he does not dispute that he actually *received* the agreement. This distinction is critical because under Delaware law, Klosterman bears the burden of rebutting the presumption that he received Discover's mailings. *See Graham v. Comm. Credit Co.*, 194 A.2d 863, 865 (Del. Ch. 1963) ("Mail which is properly addressed and posted . . . is presumed to be duly received by the addressee"). Further, if a party "fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion," Fed. R. Civ. P. 56(e)(2), and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it," Fed. R. Civ. P. 53(e)(3). Thus, given Klosterman's failure to address, let alone rebut, the facts outlined in the Wantuch declaration and accompanying exhibits, those facts will be deemed undisputed for purposes of the present motion pursuant to

Rule 56(e)(2). *See also McNeil v. City of Easton*, 694 F.Supp.2d 375, 382 n.13 (E.D. Pa. 2010) (deeming facts undisputed where the party opposing summary judgment failed to file a statement of disputed facts).

To that end, looking to the Cardmember Agreements themselves,[2] all iterations provided that an accountholder accepts the agreement by either using his Discover credit card or failing to cancel the account within thirty days of receiving the card. Discover's records reflect that Klosterman used his Discover credit card after opening his account.

Turning now to the arbitration provisions in the Cardmember Agreements: The provision in the 2009 Cardmember Agreement reads as follows:

> In the event of any past, present or future claim or dispute (whether based upon contract, tort, statute, common law or equity) between you and us arising from or relating to your Account, any prior account you have had with us, your application, the relationships which result from your Account or the enforceability or scope of this arbitration provision, of the Agreement or of any prior agreement, you or we may elect to resolve the claim or dispute by binding arbitration. IF EITHER YOU OR WE ELECT ARBITRATION, NEITHER YOU NOR WE SHALL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR TO HAVE A JURY TRIAL ON THAT CLAIM.

Accountholders could reject the arbitration provision by sending a notice back to Discover within thirty days of receiving a credit card. The 2022 Cardmember Agreement, which Discover claims was in effect at the time of Klosterman's dispute, included a similar arbitration provision that equally afforded accountholders the right to reject arbitration through the same protocol. Specifically, it states:

> In the event of a dispute between you and us arising out of or relating to this Account or the relationships resulting from this Account or any other dispute

---

[2] Klosterman makes much of the distinctions between the various corporate entities under the Discover umbrella. However, Wantuch clarifies that Discover Bank is a wholly owned subsidiary of parent corporation Discover Financial Services, LLC ("DFS"). Discover Bank is the issuer of the Discover credit card at issue in this case. Discover Products, Inc. ("DPI") is a wholly owned, direct servicing subsidiary of credit card issuer Discover Bank. As the servicer of the Discover credit card issued to Klosterman, DPI is responsible for furnishing information to, and responding to consumer disputes received from credit reporting agencies.

between you or us, including, for example, a dispute based on a federal or state statute or local ordinance ("Claim"), either you or we may choose to resolve the Claim by binding arbitration, as described below, instead of in court. Any Claim (except for a Claim challenging the validity or enforceability of this arbitration agreement, including the Class Action Waiver) may be resolved by binding arbitration if either party requests it. THIS MEANS IF EITHER YOU OR WE CHOOSE ARBITRATION, NEITHER PARTY WILL HAVE THE RIGHT TO LITIGATE SUCH CLAIM IN COURT OR TO HAVE A JURY TRIAL. ALSO DISCOVERY AND APPEAL RIGHTS ARE LIMITED IN ARBITRATION.

As with recording any delivery failures of Cardmember Agreements, Discover's "regular practice" was to notate in its records when an accountholder rejected an arbitration provision. Based on Wantuch's review, however, no such entries exist in Klosterman's account.

Under Delaware law, Klosterman's receipt and subsequent use of his Discover credit card amount to an acceptance of the terms and conditions of the Cardmember Agreements. *See Grasso v. First USA Bank*, 713 A.2d 304, 309 (Del. Super. 1998) (finding that a plaintiff's use of a credit card constituted acceptance under the terms of the operative cardmember agreement, which provided "[a]ny use of your Card or Account confirms the acceptance of the terms and conditions of this Agreement"). And in the absence of any evidence demonstrating that Klosterman either (a) failed to receive the Cardmember Agreements or (b) rejected the binding arbitration provisions contained therein, he thus manifested an intent to be bound by its terms. *See Graham*, 194 A.2d at 865.

For these reasons, Discover's Motion to compel arbitration shall be granted and this action shall be stayed pending resolution of the arbitration proceedings. *See* 9 U.S.C. § 3 ("[T]he court . . . upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement").

An appropriate order follows.

**BY THE COURT:**

/s/Wendy Beetlestone, J.

_____
**WENDY BEETLESTONE, J.**

**DATE: 10/01/24**